## Belin v. Bundy

*Carl A. Belin, Jr.,* for plaintiff.
*David Ammerman,* for defendant.

REILLY, *P.J.,* July 11, 1983—On November 19, 1981, the Clearfield County Commissioners, defendants above-named, (hereinafter Commissioners) petitioned this court under the Local Government Unit Debt Act for permission to issue bonds or notes to fund an unfunded debt resulting from their inability to pay current expenses of the county (said petition being filed to No. 81-2763-CD).

Under the law, this was the proper manner in which to proceed, but the statute would have required the commissioners to appear at a public hearing and justify their actions as set forth therein. 53 P.S. §6780-210

Pursuant to said petition this court scheduled a hearing as required by law to determine whether such permission should be granted, the hearing being set for December 10, 1981, at 9:00 am.

On November 23, 1981, Carl A. Belin, Jr., a member of the Bar of Clearfield County and a resident of Clearfield Borough, petitioned to intervene in the proceedings alleging that under the provisions of the Act the Clearfield County Commissioners were not entitled to the granting of the prayer of their petition in that they foresaw or should have foreseen that the county budget did not provide adequate revenues for the foreseeable expenditures and that to grant them permission to borrow money in this fashion would be improper. Upon receipt of said petition to intervene this court scheduled argument thereon for December 8, 1981. However, the day before said argument was to take place, on December 7, 1981, the Commissioners filed a petition to discontinue their petition and instead, on December 31, 1981, passed a resolution to raise taxes to 30 mills (ten mills above the statutory limit) without court approval and without public hearing.

On January 11, 1982, a complaint in equity was filed by Carl A. Belin, Jr., plaintiff above-named (hereinafter Belin) to the above term and number, seeking to have this court declare the tax illegal and enjoin its collection. Commissioners filed preliminary objections alleging this court lacked jurisdiction to act in the matter and demurring to the complaint generally.

On February 11, 1982, this court, by memorandum and order, ruled against the commissioners and dismissed their preliminary objections. This court then proceeded to enjoin the tax collectors of Clearfield County from returning the illegally enacted ten mill increase to the county and instead directed that the monies be paid into a designated depository. The commissioners then appealed this court's decision to the Commonwealth Court of

Pennsylvania and on March 16, 1982, the Commonwealth Court affirmed this court and declared the tax increase to be illegal.

Despite the adverse ruling of two courts, the Commissioners nevertheless proceeded to mail tax duplicates to all taxpayers of Clearfield County requiring them to pay this illegal tax and thereafter filed an appeal to the Supreme Court of the Commonwealth of Pennsylvania.

On May 26, 1983, the Supreme Court of Pennsylvania unanimously declared the tax to be illegal, thereby becoming the third court to so hold.

Following hearing on June 23, 1983, this court entered judgment in favor of plaintiff Belin, declared the 7.4 mills levied for debt service in 1982 illegal, and directed the Clearfield County Tax Claim Bureau to delete 7.4 mills from the obligation of all unpaid real estate taxes for 1982.

The issues now before this court are:

1. How best shall the proceeds collected as a result of the illegal tax, presently being held by the court-designated depository, be distributed to the taxpayer, and

2. Who shall be the responsible party or parties to properly execute and conclude this distribution.

The Commissioners argue that under section 5566(b) of the Local Tax Collection Law, 72 P.S. §5566(b) this court is bound to deliver the illegally collected tax funds into the hands of the Commissioners for disposition. The applicable section of the Act reads as follows:

"Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort,

license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within two years of payment thereof."

See Also 16 P.S. §1701 which states: "The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law."

Belin, on the other hand, argues that under its general equity authority this court has jurisdiction to enter whatever decree it deems necessary to insure proper enforcement of its order.

This court agrees with plaintiff Belin.

Initially, it must be noted that both the Commonwealth Court and the Supreme Court of Pennsylvania have held that this court had equity jurisdiction to act in this matter. Moreover, it has long been the law that if equity has jurisdiction to hear the case, then it has the power to enforce its own decrees as a necessary incident to the jurisdiction of the court. See Butler County v. Pittsburgh Harmony, Butler & New Castle Railway Co. 298 Pa. 241, 298 A.2d 347 (1929).

In any event, once equity properly has jurisdiction, it may, in the interest of avoiding a multiplicity of action, dispose of all issues of the suit. See Bor-

ough of Greentree v. Board of Property Assessments, Appeals and Reviews, 459 Pa. 268, 328 A.2d 819. (1974).

It must also be stated that, notwithstanding the above, it is hardly clear that 5566(b) of the Local Tax Collection Law applies here. To begin with, the phrasing of the statute would seem to imply that the framers did not envision an illegal tax applying equally to all taxpayers, but individual instances of taxes, etc., to which the political subdivision was not legally entitled.

Moreover, in this case the illegally collected tax monies were not paid into the treasury of the county, as specified by the act, but were paid into a court-designated depository. Nor will distribution of the fund be made out of budget appropriation of public funds, but from the escrow account itself.

This court, therefore, is satisfied that it has full jurisdiction and authority to enforce its decree in the manner deemed most appropriate and is not restricted by 5566(b).

In view of the history of this case, the court is extremely reluctant to direct the escrowed funds be paid into the general fund of the county. To insure that this court's decree is properly administered, the court will appoint the Treasurer and the Controller of Clearfield County to jointly effect the distribution of the escrowed funds in the manner hereinafter set forth.

It appears that this court must direct the funds be either refunded to the parties who paid the illegal taxes, credited to 1984 taxes, or some combination of both.

Certainly, were it possible, this court would prefer to credit the entire fund, both principal and interest, to the tax statement of the individual taxpayers as of

some specified date in 1984. This would obviously realize more of a return to the taxpayer, as none of the fund would need be expended for administering a refund. Unfortunately, such credit is not possible. The identity of the taxpayers in 1982 and the list of assessed owners of property for 1984 will not be identical. Because of sales, transfers, deaths, executions and other causes, the list of assessed real estate owners in 1984 will be substantially different from that of 1982, so that a credit applied to 1984 taxes would in many cases not benefit the 1982 taxpayer who actually paid the illegal tax.

Nor would it be practical to allow each taxpayer to elect a refund or credit. The cost of such a program, even if otherwise feasible, would be staggering. To meet the requirements of due process, an initial mailing would have to be made to all 1982 taxpayers containing a form to return to the plan administrator. Checks would have to be issued to those requesting a refund, thereby requiring a third mailing. In addition, those requesting a credit would require a check of the records to ascertain that they were indeed the present owners of the subject property and therefore entitled to the credit.

Moreover, the Local Tax Collection Law, section 5566(b), requires a refund of such illegal taxes and this court is not prepared to hold that the word "refund" can be defined to include the word "credit". As generally understood, refund means repayment in kind.

Finally, this same act provides each taxpayer a two-year period within which to claim such a refund. By ordering a general refund, this court will avoid such a time requirement, but to combine both refund and credit programs may require the inclusion of a two year period for any taxpayer to act,

thereby rendering impossible any credit toward 1984 taxes.

There can be no doubt, therefore, that a full and complete refund of the illegal taxes to the taxpayer who paid them along with the appropriate interest, will be, as the least expensive and most expeditious manner of resolving the issue, in the best interests of the taxpayers of Clearfield County.

This court therefore directs the treasurer and the controller to submit to this court within two weeks a proposed plan for effectuating such refund. During said period any interested party may submit to said officers such recommendations or suggested plans for accomplishing the refund as they may deem appropriate.

Wherefore, the court enters the following

## ORDER

Now, July 11, 1983, following hearing, it is the order of this court that judgment be and is hereby entered in favor of Carl A. Belin, Jr., plaintiff above-named, that 7.4 mills levied by the Clearfield County Commissioners, defendants above-named, in 1982, be and is hereby declared illegal, and the Tax Claim Bureau of Clearfield County directed to delete same from the obligation of all unpaid real estate taxes for 1982, and that the Treasurer and the Controller of Clearfield County are hereby appointed the parties responsible for refunding the amount of illegally collected taxes presently held in escrow to each taxpayer who paid same together with interest on said payment at the rate of 6 percent from date of payment to date of refund. Said treasurer and controller shall submit to this court within two weeks from date hereof the method of refund they deem most economical.